## Case No. 3,904.

### DIGGES v. ELIASON.

· [4 Cranch, C. C. 619.] [1]

Circuit Court, District of Columbia. Nov. Term, 1835.

REVIVOR OF JUDGMENTS — LIMITATION — RUNNING OF STATUTE.

1. The limitation of twelve years in the Maryland statute of limitations, of 1715, c. 23, § 6, does not continue to run from the date of the original judgment if it has been revived by scire facias within the twelve years. The expression "twelve years' standing," means, twelve years' standing without any proceeding towards enforcing payment.

2. The plea is not supported unless twelve years have elapsed since the revival of the judgment by scire facias.

This was a scire facias [by Norah Digges, administrator of William D. Digges, against E. E. Eliason, administrator de bonis non of John Eliason] to revive a judgment obtained by William D. Digges, in his lifetime, on the first Monday of June, 1820, and which had been revived by an award of execution thereupon, on the first Monday of December, 1826. The defendant pleaded the Maryland act of limitations of April, 1715, c. 23, § 6, and averred that "the debt, or thing in action," in the scire facias mentioned, was above twelve years' standing at the time of the impetration of the writ. The plaintiff replied that the original judgment was revived by an award of execution thereupon on the first Monday of December, 1826, and that twelve years had not elapsed since the said award of execution to the day of the impetration of this writ of scire facias, namely, the 14th of March, 1838. To this replication there was a general demurrer.

Mr. Marbury, for defendant, contended that a scire facias and fiat thereupon, is not a new judgment, and does not in any manner affect the original judgment. It stands unaltered as it stood before, and continues to stand until the expiration of the twelve years from the rendition thereof, when it becomes "a debt, or thing in action above twelve years' standing," and "not good or pleadable;" and cannot "be admitted in evidence." The language of the 6th section, is different from that in the 2d section, which merely declares that the actions therein mentioned shall be commenced or sued within the time and limitation therein expressed, and not after. It is a limitation of the action only; but in the 6th section the language applies to the cause of action; and declares it shall not be good or pleadable, or admitted in evidence. It destroys the cause of action itself, not merely the remedy. A promise to pay a judgment, will not support an action upon the judgment barred by limitation. The action must be upon the new promise.

Mr. Key, contra, contended that the judgment was revived and redintigrated by the

[1] [Reported by Hon. William Cranch, Chief Judge.]

scire facias, so as to become a new judgment, and its standing begins with the revival.

CRANCH, Chief Judge, delivered the opinion of the court.

The question arising upon this demurrer is, whether the judgment for the recovery of damages and costs is a debt, or thing in action above twelve years' standing, within the meaning of the 6th section of the act of assembly of Maryland of April, 1715, c. 23, if the court has, within twelve years next before the issuing of the scire facias, awarded an execution thereon. The words of the act are, "That no bill, bond, judgment, recognizance, statute merchant, or of the staple, or other specialty whatsoever, except such as shall be taken in the name or for the use of our sovereign lord the king, his heirs or successors, shall be good or pleadable, or admitted in evidence against any person or persons of this province, after the principal debtor and creditor shall have been both dead twelve years, or the debt or thing in action above twelve years' standing." It is entitled "An act for limitation of certain actions, for avoiding suits at law." Although the previous sections contain provisions analogous to some of those of the English statute of 21 Jac. I. c. 16, yet this 6th section seems to have been original, and intended to limit actions not limited by the statute of James; namely, actions upon single bills, bonds, judgments, recognizances, statutes merchant, and of the staple, and other specialties. Although the language of limitation in this 6th section is different from that of the former sections, its object seems to be the same. Instead of saying that the actions upon these specialties shall be brought within a certain time "after the cause of such action accruing," as in the second section, it says that no such judgment or specialty "shall be good or pleadable, or admitted in evidence, after the principal debtor and creditor shall have been both dead twelve years, or the debt or thing in action above twelve years' standing." The 2d section forbids the action; the 6th destroys the evidence. The object is the same in both. Both are equally effectual: both have an exception in favor of those who are under a temporary incapacity to sue; and both should receive the same construction. What would save the right of action in one, should save it in the other. It cannot be supposed that the legislature intended that a creditor who recovered judgment and took out his fieri facias within the first year thereafter, and so from year to year for twelve years, and upon each writ made a small part of the debt, say one twentieth, should not have another fieri facias in the thirteenth year for the balance due upon the judgment. This would be contrary to all analogy in other cases. A creditor who diligently pursues all his lawful remedies in due season, cannot lose his debt by lapse of time. It is evident, therefore, that the leg-

islature by using the terms "twelve years' standing," did not mean merely twelve years from the date of the judgment. The statute must have a reasonable construction so as to effect its intention without depriving the diligent plaintiff of his rights. Thus by the 2d section actions must be commenced or sued within three years from the time of the cause of action accruing; yet the capias ad respondendum, upon which the defendant is taken for a single contract debt, and which is strictly the commencement of the action, may be dated long after the term of limitation has expired, provided the plaintiff has issued a previous capias within the term of limitation, and has continued to issue subsequent writs from term to term until the defendant is taken. So, at common law, a plaintiff could never have an execution upon his judgment in a personal action unless he took it out within a year and a day after the rendition of the judgment; for no scire facias was given by the common law in such a case; and the plaintiff was driven to his action of debt on the judgment. But when the scire facias was given by the statute of 13 Edw. I. c. 45, the plaintiff might, at any time after judgment, have execution by means of a scire facias; and after the return of the execution unsatisfied he might renew it from term to term until he obtained satisfaction. In process of time this renewal of the execution from term to term became a mere matter of form, and the courts permitted them to be entered upon the roll as if issued and continued, (when in fact they were not) from the return of the first writ until the actual issuing of another. A judgment revived by scire facias has no greater vigor, nor longer life, than it had when it was originally rendered. By the award of execution, it is revived for one year, and if the plaintiff did not issue his execution upon that award, the judgment again expired. Hence it was necessary not only to take out the execution within the year after the award, but to continue it from term to term, or at least from year to year. If he did this, he used all necessary diligence, and was not affected by the limitation of a year and a day. The limitation created by the act of Maryland, is not limitation of execution, but of the right of action, and is not for a year and a day, but for twelve years; yet the same principle applies to both, namely, that he who uses due diligence in pursuing his right, shall not lose it by lapse of time. As the plaintiff saves his execution from the common-law limitation of a year and a day, by taking out his execution within the year, so it would seem to follow, by analogy, that he should save his right of action by scire facias on his judgment, from the statute limitation of twelve years, by issuing it within the term of limitation. It has been before shown that the expression, "twelve years' standing," cannot mean simply twelve years' date. What then does it mean? We think it means twelve years' standing, without any proceeding towards enforcing payment. It was an expression in common use in 1715, when the act was passed, and was familiar to the lawyers of that day, as it is to be found in many of the old reporters. Thus in the case of Hardisty v. Barny, 2 Salk. 598, it is said, "If a judgment be above ten years' standing, the plaintiff cannot sue a scire facias without motion in court; if under ten, but over seven, he cannot have a scire facias without a motion at side-bar. Note, if after such motion, and judgment revived by scire facias, the defendant dies before execution, the plaintiff must sue a new scire facias; but may have it without motion, for the judgment was revived before. Per Curiam." Here it is evident that by the words "ten years' standing," the court meant ten years' standing without execution or scire facias; for the court says further, "If after such motion, and judgment revived by scire facias, the defendant dies before execution," (that is, before the expiration of the year and a day,) "the plaintiff must sue a new scire facias, but may have it without motion;" and they gave the reason, "for the judgment was revived before," and therefore was neither of ten nor seven years' standing; so that a judgment revived by scire facias within twelve years, is not a judgment of twelve years' standing. Whether the judgment on the scire facias is to be considered as a new judgment for the original debt, is not material, as, according to the long-established practice in the English courts, before the passing of the Maryland act of 1715, the revival by scire facias prevented the original judgments from being considered as standing, within the meaning of that word, in the expression, "ten years' standing." The opinion in the case of Hardisty v. Barny, was given in 1695, and was a declaration of the then long-established practice of the court. The Maryland act was passed twenty years after that case, and probably with full knowledge of that practice. The English authorities, also, generally consider and speak of an award of execution upon scire facias as reviving the original judgment, and such also has been the general understanding and language in this country. Upon these considerations, the court is of opinion, that as twelve years had not elapsed between the revival of the judgment by scire facias in 1826, and the suing out of the present scire facias, the judgment is not barred by the statute. Judgment upon the demurrer for the plaintiff.