The Chief Justice
délivered the opinion of the court:
This cause w;as submitted to us several months ago, and has been the occasion of much investigation and consideration by the court.
The complainants, as judgment creditors, commenced their suit in equity to enforce the payment of three judgments recovered by their testator, Voltaire Willett, against Henry B. and Benjamin F. Otterback, under the firm name of H. B. Otter-back & Bro. The bill alleges that these judgments were recovered in the late Circuit Court of this District on the third day of February, 1863, and, by the way, just one month prior to the Act of Congress creating the present court. On the second day of March, 1863, the last day of the former court, writs of fieri facias were issued on said judgments and returned thereafter to this court, nulla bona. The bill further alleges that the judgment plaintiff died September 21, 1869, and his death was suggested to the court on December 3, 1874, and complainants, as his executors, on motion, but without notice, substituted and suit revived. December 14, 1874, other writs of fieri facias were issued and returned nulla bona. September 1, 1877, writs of scire facias were issued and returned served September 5, 1877, as to Henry B. Otterback and “ not found” as to Fouis Otterback. October 4, 1877, an alias scire facias was issued as to said Fouis and returned on the same day ‘‘not found,” and thereafter, on the same day, judgment of fiat was entered. April 22, 1878, fi. fas. were again issued and returned nulla bona. On April 14, 1885, and July 20, 1889, other writs offieri facias were issued, and were also returned nulla bona. On the 24th day of October, 1889, the bill in this case was filed. The bill further avers that the *327 judgment defendants were embarrassed when judgments were recovered and have ever since been insolvent, and that they have no means or property out of which the judgments could be satisfied except moneys now in the custody of defendant trustees. The bill prays for discovery as to the amount in the hands of the trustees, and that the judgment be decreed to be paid from said funds; that the trustees' be restrained from paying anything to said judgment defendants until complainants’ claim is satisfied, and for general relief. To this bill the Otterbacks interposed a general demurrer.
The criticism upon the proceedings enumerated may be summarized as follows: first, the failure to issue a scire facias before substitution of the complainants, as executors after his death; secondly, the issuing of a fieri facias without a scire facias, after such ex parte revivor and substitution; third, the misnaming of one of the complainants by calling him “Joseph ” instead of “James ” in some of the writs and proceedings; fourth, variance between the recitals in the several writs and the judgments of revivor and the wording of original judgments; fifth, the entry of judgment fiat before the rule day named in the alias writ of scire facias, as to the defendant Douis Otterback, who was not found; sixth, irregularities in the return of “ not found,” instead of nihil; and seventh, irregularities in describing the judgments as having been recovered by the executors, instead of their testator, and as having been recovered in the court instead of in the late Circuit Court of this District.
To all of these criticisms the complainants answer by saying that the defects claimed to exist in the writs and proceedings are only irregularities, or clerical mistakes which have in no way misled the defendants, and which the court might at any time have corrected, if its attention had been called to them in any way; that said writs and proceedings are not void, but at most only voidable, and until set aside by some direct attack, they perform all the functions substantially of perfect proceedings, and that, at any rate, the judgment of revivor of 1877, is a judgment, and cannot be impeached in this case, even if the original judgments had been “above *328 twelve years’ standing,” when the writs of scire facias were issued, the Statute of Limitations not having been pleaded in defense to same.
If wé were to examine each of these criticisms separately and discuss the authorities cited by counsel respectively it would protract this opinion unnecessarily. We have carefully examined these authorities, and think the rule applicable to this case, and applicable to all these conditions is readily deduced from the authorities. This court recently held in Loeber vs. Moore [reported ante p. i] that where a judgment of fiat had been entered by the Circuit Court, and, as was claimed, upon an original judgment which was invalid and void and which had been kept alive from time to time by proceedings which were claimed not to be such as the law required, that the defendant may not attack the original judgment, nor can he attack the proceedings had under the original judgment if they are not void. He cannot attack the original judgment because of irregularity in obtaining it if the record shows that the court had jurisdiction to render it. He cannot attack the proceedings under and upon the judgment if they are simply irregular and voidable, in defense to a writ of scire facias or a bill in equity to enforce satisfaction of a fiat judgment. In other words, the proceeding in scire facias is so far an action that in pleading and proving defenses, all proceedings in the original action anterior to the issuing of the writ of scire facias must be regarded as collateral to the latter. Loeber vs. Moore [supra] Dickson vs. Wilkinson, 3 Howard, 57, 61.
It follows necessarily in this case that the only inquiry is whether the court had jurisdiction to enter the judgment of fiat. The theory of the defense in support of the demurrer is that the Act of Maryland passed in the year 1715, Ch. 23, Sec. 6, providing that, ‘‘No bill, bond, judgment, etc., shall be good and pleadable or admitted in evidence against any person or persons of this province after the principal debtor and creditor have been both dead twelve years or the debt or thing in action above twelve years’ standing,” etc., applies. In Diggs vs. Eliason, 4 Cranch, C. C., 619, the late Circui *329 Court of this District held that the expression “twelve years’ standing” as used in this statute and applied to judgments means twelve years’ standing without any proceeding towards enforcing payment. In Horsey vs. Beveridge, 4 Mackey, 291, this court decided that “Execution may issue on a judgment of this court at any time before the expiration of twelve years from the date of the last execution.”
An examination of the record shows that there was not a period of twelve years intervening without any proceeding towards enforcing payment at any time after the rendition of the judgment in 1863. Nor is this claimed by the defendants. But it is claimed by the defendants that the proceedings are all and severally so informal and defective as to render them mere nullities, and therefore "they cannot be urged to prevent the force and effect of the statute. But, we do not find that the defects complained of are such as render the proceedings void; and holding that in this case, we must regard such proceedings occurring before the commencement of this action as valid, the dermirrer to the bill is overruled and the cause remanded to the Equity Court for further proceedings.