Mr. Justice Cox
delivered the opinion of the court:
This case involves sundry questions of minor importance, but the principal and important question involved may be presented by a brief statement of facts.
On the 20th of January, 1862, the plaintiff, Crumbaugh, recovered a judgment, on a partnership debt, against Henry B. and Benjamin Bouis Otterbaclc in the Circuit Court of this District, for $10,000 damages, to be released on payment of a smaller amount. A writ of fi. fa. was issued thereon in May, which was returned nulla bona, to October Term, 1862.
No further step was taken to enforce the judgment until August 25, 1873, nearly 'eleven years after the return of the fi. fa., when & scire facias was issued against both defendants, which was returned on the 29th of that month, scire feci, as to Henry, and nihil as to Benjamin B-
A further suspension of proceedings took place, until November 30, 1885, twelve years and three months since the last step, when a new scire facias was issued against both defendants, but was not served on Henry and was returned nihil as to Benjamin B- on January 9, 1886.
On the 14th of June, 1889, nearly three years and a half after this, on the basis of the return of scire feci as to Henry, made nearly sixteen years before, and the second return of nihil as to Benjamin, made after an interval of over twelve years between that and the first return, a fiat was entered against both defendants.
*443 This, however, was set aside on motion and the defendants allowed to plead to the scire facias.
Besides the plea of nul tiel record, both the defendants pleaded to the scire facias, in substance, that the judgment was of more than twelve years’ standing when the present writ was issued, and that the plaintiff, by reason of his failure to follow up his sci. fa of 1873, had discontinued the proceedings thereunder. These pleas were demurred to, the demurrer sustained and judgment given for plaintiff, from which an appeal was taken to this court.
The language of the Act of Assembly of 1715, Ch. 23, Sec. 6, is:
“No bill, bond, judgment, statute merchant or of the staple, or other specialty whatsoever, except such as shall be taken in the name or for the use of our Sovereign Ford the King, his heirs and successors, shall be good and plead-able or admitted in evidence against any person or persons of this province, after the principal debtor and creditor have both been dead twelve years, or the debtor thing in action above twelve years standing; saving, etc., etc.
What is the meaning of the terms “twelve years standing?” At first blush it would seem to be twelve years of existence, so that the period should be counted from the date of the judgment. And such was the holding of the Court of Appeals of Maryland in the first case before them, in which the question arose, viz., Mulliken vs. Duvall, 7 Gill & Johnson, 355, decided in 1835, in which the court held that although a ft. fa. had been issued and levied on lands and so returned, the twelve years should count from the date of the judgment, and not from that of the return.
But in the case of Digges vs. Eliason 4 Cranch, C. C., 619, decided in the same year as the last case, the Circuit Court of the District construed the statute more liberally, and held, substantially, that every new act done towards the execution of the judgment gave it a new lease of life, and that the “twelve years standing” should be counted from the last proceeding towards the enforcement of the judgment, and, in *444 that case, it should run from the date of a fiat rendered on it within twelve years before the set. fa. by which that suit was begun, and not from the original judgment. It was suggested that a party might be diligently pursuing his remedies all through the twelve years — perhaps making partial collections during the period — and the twelve years might expire in the midst of his efforts, and it would be unjust to hold that, under such circumstances, his debt had become extinct. The twelve years standing, therefore, ought to mean, standing without any effort to collect.
Tested by this rule, how does the present case stand?
The practice in scire facias is thus stated in 2 Tidd’s Practice, p. 1038. “Where the sheriff returns nihil, the plaintiff must sue out a second or alias writ of scire facias, commanding the sheriff as before he was commanded, etc., and if upon this second writ the sheriff also return nihil, and the bail or defendants do not appear, there shall be judgment against them; two nihils being deemed equivalent to a scire feci. It was formerly usual to sue out both writs of scire facias together, making the teste of the second as if the first had been actually returned; but now there is a rule of court requiring that no writ of alias scire facias shall issue until the first writ be returnable.
Where there are two writs of scire facias, the second should be tested on the return day, or by original, on the quartodie post of the return of the first, except in error, or the return day happen on Sunday.”
In this case, it appears that on a judgment rendered on the 20th of January, 1862, against Henry D. Otterback and Benjamin T. Otterback, in which a fi.fa. had been issued, and returned nulla bona to October Term 1862, afterwards a scire facias was issued on the 25th of August, 1873, nearly twelve years after the judgment, and nearly eleven years after the fi. fa. was returned nulla bona, which scire facias was returned by the Marshal, scire feci as to Henry, and nihil as to Benjamin T. on the 29th of the same month. No steps were taken to enforce the judgment until November 30, 1885, twelve *445 years and three months after the return aforesaid, when the scire facias was issued against both defendants, was not served in Henry and was returned nihil as to Benjamin.
The only object of a scire facias on judgment is to obtain a fiat. As we have seen, if the defendant is not found, this can only be had on two returns of nihil. The single return of nihil, therefore, as to Benjamin E- was ineffective and inoperative for any purpose. The scire facias issued in November, 1885, was as good as an original scire facias, if the judgment was still alive, but, in no sense can it be considered as an alias, because it was issued long after an alias could have issued, which, as we have seen, must have been tested as of the return day of the original. And, besides, it does not purport to be an alias. It cannot be connected with or deemed a continuation of the original, and, therefore, the return of nihil in August, 1873, must be deemed the last proceeding in the direction of enforcing the judgment, before the present sci.fa. was issued, more than twelve years afterwards, unless a further contention of the plaintiff be well founded, which we now proceed to consider.
In Evans’ Practice, p. 104, it is said: “Connected with the subject of renewals is the rather curious subject of a mode of evading the Statute of Eimitations, which the English judges have suffered to grow up, and, indeed, fostered although it palpably amounts to a judicial repeal of the statute. Nevertheless, the English courts have so thoroughly established it that the Court of Appeals of this State have felt themselves bound not to disturb the current of authority. We allude to the mode of evading the Statute of Eimitations by what is sometimes called entering a writ, and continuances, to save the statide. To effect this object, it is necessary, in the first instance, to issue a writ and procure it to be returned ‘not served.’ This writ must be issued before the statute has attached. If it were really followed up by a series of writs, bona fide continuing the action, it would be a fair compliance with the statute. But the'English courts have decided that it is not necessary to issue any more writs until it is convenient to have one served; but that entries, of what *446 they call continuances, that is, entries of the award of fictitious writs, and of the fact that the sheriff did not send the writ, at the proper time, may be made out at any time, connecting the two real writs together. It is even said that these continuances may be made out in the attorney’s office. It is clear that this absolutely puts an end to the protection of the statute.”
The author does not refer to any case in which the Court of Appeals recognized this practice.
Now, it is claimed that the course pursued in the present case is that which is approved as legal by Evans. This is to say, the sci. fia. issued in 1873 was returned nihil, which is equivalent to 1 ‘not served’ ’ or ‘ ‘not to be found, ” as to Benjamin Louis Otterback, and the continuances may be entered up from that return to the issue of the present sci. fia. in 1885 and the proceeding treated as a pending and continuous action.
And we are referred to the case of Gorham vs. Shepherd, 6 Mackey, 596, as showing that the practice outlined by Evans has been sanctioned in this District.
In that case, however, no such question was made. It is true that a writ was issued and returned not to be found, and sub silentio, an alias was issued some years afterwards without having regularly renewed the first writ from term to term in the meantime. But the defendant accepted service of the last writ and then raised the single question whether suit could be brought at all against a non-resident, and whether the original writ was not forbidden by section 767, Rev. Stat. D. C., which says:
“No action or suit shall be brought in the Supreme Court by original process against any person, who shall not be an inhabitant of, or found within the District, except as otherwise specially provided.”
And this question alone was decided by the court.
And it is remarkable that the practice in question has been entirely repudiated by the Court of Appeals of Maryland in the case of Hazlehurst vs. Morris, 28 Md., 67, *447 decided in 1867. That was an action of assumpsit; a writ issued to September Term, 1862, was returned tarde. It was not renewed to the next term. About a year after the first writ, a second was issued and returned “summoned.'” The court directed the continuances to be entered up as if there had been no omission to renew the writs. From this the defendant appealed, claiming that this omission was a discontinuance. After referring to certain citations, from Tidd’s Practice, the court said:
“It is urged by the appellees that the passages above quoted show it to be the practice to keep alive judgments by the issue and return of one fi. fa., and then by merely entering continuances upon the record, without renewing the executions, and that the same practice prevails as to suits. We know of no such practice in this State, as applicable either to suits or exectdions, and are of opinion' that this court announced the only practice when it stated that a judgment might be kept alive for an indefinite time by issuing a fi. fa. and having it returned, and then regtdarly renewing it from term to term."
After referring to an unreported case, Dennison, Administrator, vs. Trull, they add:
“So far from that case sustaining the views of the appellees, it shows the practice to have been exactly the reverse of that contended for by them. We do not find any authority for such practice, but are of opinion that such an one ought not to be tolerated. Plaintiff might lie by for years and then bring the defendants into court, after their witnessess were dead or their proofs lost or destroyed, and obtain judgments against them upon claims not founded in justice; and the practice be thus used as a means of injustice and oppression. This court could not sanction a practice so fraught with mischief, unless it were so long and so clearly established as to have the force of positive law. Where a party institutes a suit and the summons proves ineffectual to bring the defendant into court, and is returned by the sheriff, in order to keep the suit alive, the summons must be regularly renewed from *448 term to term until the defendant is taken. The omission to renew it operates as a discontinuance of the action. There is, therefore, error in the order of the court below.”
Though Evans’ Practice and the decision in question differ, they may both be said to be authority for the proposition that the practice in question is not to be extended to any class of cases in which there is no precedent for it.
If I may be allowed a brief digression here, I would say, that an expression in the opinion of the court in Thompson vs. Beveridge, 3 Mackey, 170, was probably too broad.
After discussing the English practice of having a fi. fa. returned, and afterward entering úp the continuances at any time, the opinion, says:
“This condition of the common law obtained in the State of Maryland, and was derived from Maryland by us, qualified, however, by the Act of Assembly in question.”
The case of Hazlehurst vs. Morris denies that such practice exists in Maryland, and on referring to Evans’ Practice I find that he states, page 55:
1 ‘ The English mode is to issue one execution, procure it to be returned and filed, and afterwards continue it to the time when a real execution is wanted, by fictitious entries on the record, which are not made until they are required to be used. The Maryland mode is to renew the execution every court, by an order to the clerk to issue execution 1 to lie. ’
The expression used in the case of Thompson vs. Beveridge, supra, however, had no bearing on the result of the case, because the plaintiff had delayed his proceedings until the judgment was no longer good and pleadable, and the entering up of continuances could do him no good.
To resume: There is really, then, no satisfactory authority for the practice in question, even in regard to original writs, either in Maryland or the District of Columbia.
How is it with regard to writs of scire facias? It is very clear that no such practice ever could have existed as to such proceeding, at common law, for the simple reason that there *449 was no necessity for it. The Statute of ^imitations of James first did not apply to judgments or other specialties. They never became extinct. A sci. fa. could be issued on a judgment at any time, except that after ten years from the date of judgment, a motion had to be made for it, with an affidavit that it had not been paid, and after fifteen years, a rule nisi had to issue first. There was no necessity for issuing a sci. fa', or bringing an action of debt, to save the bar of the statute. And therefore there is no trace of such a practice, involving the entry of continuances, as in the case of original process, designed to evade the statute, as far as we are informed. The practice described by Tidd,- as to original process, was only supposed to exist in Maryland as a part of the common law. Any such practice in reference to scire facias was certainly, not so derived. If it ever existed in Maryland, it was indigenous to that State, but we know of no precedent for it in that State or this District. As we have already seen, the only continuance possible in the case of a return of nihil to a sci. fa. is an alias writ. And as that was omitted in this case there was simply a discontinuance of all process as against Benjamin D- If a second return of nihil had been had and a fiat entered, the judgment would have died out in twelve years from that date. And yet the argument for the plaintiff gives more effect, in the way of continuing the life of the judgment to a mere return of nihil than to a judgment of fiat, which seems altogether unreasonable. The date of the last proceeding to enforce the judgment against him must be considered to be the date of the return of nihil as to him, August 29, 1873, which was more than twelve years before the present sci. fa. was issued, and therefore, as to him, the judgment was then no longer good or pleadable and his plea must be adjudged good, and the demurrer to it overruled.
The next question relates to the position of Henry B. Otterback.
It is claimed that, at least in his case, there was a pending cause all the way up to the issue of the sci. fa. in November, 1885.
*450 The nature of the writ of scire facias is thus described in Foster on Scire Facias, pp. n, 13:
“In all cases where the writ of sci.fa is required, either to revive a previous judgment above a year old, or where a person has become interested in the suit, who was not a party to the judgment, it is a jzidicial writ, to warn the defendant to plead any matter in bar of the execution; and in these cases it is only a quasi continuance of the former writ, brought merely to revive the former judgment, and is then properly called a writ of execution.” Again, “the writ in all cases is in the nature of an action, becatise the defendant may plead to it; for whenever the defendant may plead to any writ, whether original' or judicial, it is in law an action; and although to revive an action it is a judicial writ to continue the effect of, and have execution of, the former judgment, yet it is in the nature of an action, because the defendant may plead any matter in bar of the execution upon the first judgment.”
It is, then, both an execution and in the nature of an action. And the only reason for the latter branch of the proposition, as stated both in Foster and other works is, that the defendant may plead to it.
If, in this case, Henry Otterback had appeared and pleaded, an issue would have been joined, and there would have been a pending cause which would have been calendared and continued from term to term until tried, and the defendant could only have rid himself of it by a trial.
But when the defendant, though duly summoned, declined to appear and defend, there was no issue joined, nothing to calendar for trial or continuance. The next step in the proceeding was simply to obtain the fiat or order for execution.
There was no occasion for delaying this longer than to obtain a second return of nihil as to Benjamin T.
Fven in the case of original writs, there is no such practice as entering up continuances from term to term, where the defendant, being duly summoned, has defaulted and the plaintiff is entitled to take judgment. In such case the process is executed and satisfied, and there is no occasion *451 for renewals or continuances; so as to a scire facias which has been served and is not defended.
The sci. fa. has ceased to perforar the functions or answer the purposes of an action and remained an execution, pure and simple, and, it would seem, ought to have the same effect as the issue of a fi. fa., not followed up by any further proceeding. We have not been referred to a single case, English or American, which countenances the idea that, under such circumstances the sci. fa. is to be considered a running or continuing action, to have the same effect as if writs had been constantly renewed up to the issue of the present sci. fa.
On the contrary, in the case of Vanderheyden vs. Gardener, 9 Johnson’s R., p. 79, it was held, that where a sci. fa. was issued and returned in November, 1808, scire feci, but a fiat was not had until the 13'th day of May, 1811, the fiat must be struck out because the omission to enter it promptly after the return of the fi. fa. was a discontinuance. The court said:
“If the plaintiff who sues out a sci. fa. to revive a judgment does not proceed upon it within a year and a day, it is a discontinuance of it and the plaintiff must commence by scire facias de novo.” * * *
“This cause comes within the rule, for between the entry of default and entry of judgment there was an interval of two years and five months, and any other view taken by the court would really operate as a judicial repeal of the Act of Eimitation of Maryland.”
The last proceeding to enforce this judgment before the sci. fa. of 1873, was the return of the fi.fa. to October Term, 1862, According to the rule laid down in Digges vs. Eliason, the judgment would cease to be good and pleadable in October, 1874, but for the sci. fa. of August, 1873. If that had been defended, and the controversy had lasted for several years, it might be reasonable enough to hold that it was a continuing proceeding to enforce the judgment, up to its close.
But to hold that a mere return of service to a sci. fa., with a suspension of further proceedings,- constitutes a pending *452 action of indefinite duration would make the Act of Ifimitations a mere nullity.
No other claims than specialties expire of themselves, but the statute merely bars the remedy upon them, by action, if the defendant choose to insist on it.
But as to judgments and other specialties, the Maryland statute introduces a new feature by extinguishing the cause of action itself after it has been standing twelve years. It is a very liberal interpretation of the statute to make the limitation count from the last proceeding taken to enforce the judgment. According to this, if two nihils had been returned as to Benjamin, and the plaintiff had taken his fiat in 1873, his judgment would have been good for twelve years from that date only.
But, according to the argument for the plaintiff, if he is able to ask a fiat, but chooses not to do it, or to take any other step whatever, his omission to take a fiat is more efficacious in prolonging the life of the judgment than the fiat itself. He has initiated a self-perpetuating proceeding, and the judgment never can be standing for any time after it, because it has no termination. So that, by the election of the plaintiff not to take his fiat when he might do so, he gives his judgment a vitality of indefinite duration and makes the statute a dead letter.
We do not think that this claim is maintainable on principle or authority, but hold that the sci.fa., as against Henry, must be held to have stopped short .with the return of scire feci in 1873. .
Another question is presented. This judgment was for a partnership debt, which, at that time, was strictly joint. On a joint judgment, where the debt is joint, and not joint and several, the sci. fa. is joint and must follow the judgment. Foster on Scire Facias, pp. 20, 21.
And in such case, if a plaintiff voluntarily discontinues or abates as to one, the rule seems to be that it is a discontinuance as to all.
The rule of the common law was that in a joint action, *453 if one defendant is not served, the plaintiff must exhaust his process against that one before he can ask judgment against the others. And hence it was held by the Supreme Court of the United States in Barton vs. Petit & Bayard, 7 Cranch, 194, that in an action of debt on a judgment against two, where it appeared that the plaintiff had abated as to one, and obtained judgment on verdict against the other, and the defendant moved in arrest, without success, the judgment must be reversed.
So, in Coleman vs. Edwards, 2 Bibb, 595, and Williams vs. Fowler, 37 B. Monroe, 47, it was held that a discontinuance as to one of two defendants to a sci. fa. was a discontinuance as to the other.
In answer to this it is said that under Section 827, Rev. Stat., D. C., the plaintiff may elect to sue all or any of joint obligors.
It is obvious, however, that this applies to the original action only.
“Where money is payable by two or more persons, etc., one action may be sustained and judgment recovered against all or any of the parties, etc.”
The object of the sci. fa. is to have execution on a judgment already recovered, and we do not think it is within the purview of this section.
The plaintiff alleges, as an excuse for not proceeding to fiat against Benjamin E- Otterback, that he had a right to wait until personal service could be had upon him, so that the fiat would be binding on him in any other jurisdiction.
If this is not a far-fetched excuse devised by the ingenuity of counsel, it is, at least, one of which the common law takes no note; and, moreover, it does not seem to be founded on any good reason. There was no necessity to suspend proceedings until Benjamin E- Otterback could be found.
The rule of diligence required that the plaintiff should go on and have his fiat against both parties, and then, at any time within twelve years thereafter, he might issue a new sci. fa. and have it served personally if the defendants could *454 be found. There was no necessity to suspend proceedings in order to secure personal service. The conclusion on the whole is, that the proceeding to enforce this judgment before the present sci. fa. was issued, terminated in August, 1873, more than twelve years before; that the defendant’s pleas were good in law, and tlie judgment against the defendants must be reversed.